FIRST NATIONAL BANK OF FERGUS FALLS v. SECURITY BANK OF MINNESOTA.[1]

May 6, 1895.

Nos. 9195—(33).

**Party-Wall Agreement—Lien—Personal Judgment.**

> The plaintiff and B., owners of adjoining lots, executed a party-wall agreement, duly recorded, whereby plaintiff was granted the right to and did erect one-half of the wall of its building on B.'s lot, who covenanted, for herself and assigns, to pay plaintiff or its assigns one-half of the cost of the wall whenever she or they used it in erecting a building on her lot, but the ownership of the whole wall was to be in the plaintiff until such payment was made. Upon making the payment the wall was to become a party wall. H., a subsequent purchaser of B.'s lot, erected a building thereon, and used the wall as a part of his building, but never paid for it. Defendant is now the owner and in possession of B.'s lot and building thereon, by virtue of the foreclosure of certain mortgages thereon, executed since the party-wall agreement was recorded. *Held*, that such agreement created an equitable charge and lien on B.'s lot to secure the payment of one-half of the cost of the party wall, and, being recorded, affects with notice all subsequent purchasers and mortgagees, and they take the lot subject to the equities, charges, easements, and servitudes created thereon or therein by the agreement. *Held*, further, that the plaintiff is entitled to enforce its lien on B.'s lot, now owned by the defendant, but it is not entitled to a personal judgment against the defendant for the amount thereof.

**Findings Sustained.**

> Evidence considered, and *held* to justify the findings of fact by the trial court.

Appeal by defendant from a judgment of the district court for Otter Tail county, entered in pursuance of the findings and order of Baxter, J. Modified.

[1] Reported in 63 N. W. 264.

*Cobb & Wheelwright,* for appellant.

*Williams & Cowing* and *John P. Williams,* for respondent.

START, C. J. On July 8, 1884, the plaintiff and Elsie Mathies were owners of adjoining lots, situated in the city of Fergus Falls, —the former owning lot 9, and the latter lot 10, in block 13 of the original plat of the city,—and on that day they mutually executed a party-wall agreement relating to their lots, respectively, which was duly recorded in the office of the register of deeds of the proper county on July 11, 1884. This agreement, after the recital of the ownership of the adjoining lots by the parties, and that the first party (the plaintiff) was about to erect on its lot a brick building, provided that the first party might build one-half of the brick and stone wall of its building on the lot of the second party (Mathies), such wall to be used as a party wall, upon the terms, conditions, and considerations named therein, and, further, the second party, for herself, her executors and assigns, covenanted with the first party, its successors or assigns, to pay to it or them at the time and whenever the construction of a building shall be commenced on lot 10, one-half of the cost of so much of the party wall as shall be used, in length, in the construction of such building. The rest of the provisions of the agreement here material are as follows: "And it is understood and agreed that the party of the first part hereby covenants that upon the payment by the party of the second part for that portion of said partition wall hereinbefore described, according to the terms hereinbefore specified, said party of the second part shall become the owner in fee of an undivided one-half of such portion of said partition wall as she shall be entitled to use in the manner and for the purposes hereinbefore specified; it being understood that such part and portion of said partition wall so used in construction of such building on said lot ten (10) as rests upon said lot ten (10) shall thereby become the property of the said party of the second part, her heirs or assigns. It is mutually agreed by and between the parties hereto that this agreement shall be perpetual, and at all times be construed as a covenant running with the land of the said party of the second part, being said lot ten (10) of said block thirteen (13), but that no part of the fee of that part of lot ten (10) upon which the said party wall above described is to stand in part shall pass or be vested in

the said party of the first part, its successors or assigns, by virtue of these presents."

After this agreement was made and recorded, and in the year 1884, the plaintiff erected its brick building, and placed one-half of its party wall on lot 10, pursuant to the agreement. On May 3, 1887, the original covenantor, Mathies, conveyed by warranty deed lot 10, and her grantees on November 8, 1887, mortgaged the lot to M. J. Clark to secure the payment of $2,500; and thereafter, and on September 10, 1888, they conveyed it by warranty deed to Willis J. Holmes, who on August 31, 1889, mortgaged it to T. E. Penny to secure the payment of $6,500; and during the summer of 1889 Holmes erected a brick building on the lot, and in so doing used 85 feet in length of the party wall as the wall of his building on the side next to the plaintiff's lot. On January 31, 1893, the defendant, by virtue of the two mortgages on lot 10, and a foreclosure thereof, became the owner of lot 10 and the building thereon erected by Holmes, and has ever since been in the possession, use, and enjoyment thereof. The plaintiff has never been paid any part of the cost of the party wall, although it demanded such payment from Holmes and from the defendant after it became the owner of the building and lot, which was refused. Thereupon the plaintiff brought this action. The prayer of the plaintiff's complaint was for equitable relief, that the amount it was entitled to recover be ascertained by the court, and that it have judgment therefor against the defendant, and that the same be adjudged a lien upon lot 10. The trial court found substantially the foregoing facts, and that one-half of the cost of so much of the party wall as was used in the erection of the defendant's building was the sum of $831.82, and, as a conclusion of law, that the plaintiff was entitled to the relief demanded in its complaint; but a personal judgment only against the defendant for the amount was entered, from which it appealed.

1. Practically, the only question in this case is, does the party-wall agreement create an equitable charge or lien on the defendant's lot to secure the payment of one-half of the cost of the party wall? If it does, the defendant's title is subject to such charge, for the contract is a conveyance, within the recording acts of the state. It relates to the defendant's lot, and, having been recorded,

it is notice to all subsequent purchasers and mortgagees acquiring any title to or lien thereon, and all persons claiming under them. Therefore it is immaterial whether the defendant had any other notice of the rights of the plaintiff, except that afforded by the record, and the existence of the party wall upon its lot, as a part of the building thereon.

In reading this party-wall agreement, for the purpose of ascertaining its meaning, it is important to note that by its express terms the plaintiff acquires the right to place one-half of the wall upon what is now the defendant's lot, and that it is to be used as a party wall only upon the condition and terms that the plaintiff or its assigns are paid one-half of the cost of the wall, which the covenantor agrees, for herself and her assigns, to pay whenever she or they shall commence the erection of a building on lot 10; that it is only by paying for the wall that she or they can acquire any title to it,—that is, the plaintiff remains the owner of the wall, until it is paid for, with the right to maintain it on the covenantor's lot, for its exclusive use, until the right to use it as a party wall is acquired by her or them by such payment; and, further, that the agreement shall be perpetual, and be construed as a covenant running with the land.

While the declaration of the parties that the agreements shall run with the land is not controlling on the question whether or not they do, yet, when all the provisions of this covenant are read together, it is clear that those we have specially referred to do run with the land, for a covenant runs with the land when either the liability to perform it (i. e. its burdens), or the right to take advantage of it (i. e. its benefits), passes to the assignee of the land. Shaber v. St. Paul Water Co., 30 Minn. 179, 14 N. W. 874; Mackey v. Harmon, 34 Minn. 168, 24 N. W. 702. The manifest purpose of these special provisions is to secure the payment of the cost of one-half of the wall to the plaintiff or its assigns. The stipulation that this cost shall be paid at the time of the commencement of the erection of the building on lot 10 simply fixes the time when the right to demand the payment accrues. Because the plaintiff did not insist upon the payment at the time, it is not bound to rely solely upon the personal liability of the then owner. To hold, as claimed by defendant, that plaintiff's remedy is limited to a per-

sonal action against Holmes, the assign who first used the wall in erecting the building, it would be necessary to eliminate from the contract, by construction, its express provisions that the wall is to be used as a party wall only upon the condition of payment, and until that is made the whole wall belongs to the plaintiff. Now, the owner of lot 10 having, without making such payment, appropriated the wall, and made it an inseparable part of his own building and lot, the purchase price thereof is an equitable charge and lien thereon, by virtue of the covenants in this party-wall agreement. This construction is as favorable to the defendant as the terms of the contract will justify, for if it was construed strictly it would give the plaintiff the right to recover from the defendant possession of all that part of the wall constituting a part of its building. This, however, is an equitable action, and the court must reject any such technical construction, and, looking alone to the substance and justice of the agreement, treat the plaintiff's conditional ownership of so much of the wall as is on the defendant's lot as a charge and lien on defendant's lot to secure the payment of the purchase price of the wall.

The case of Pfeiffer v. Matthews, 161 Mass. 487, 37 N. E. 571, relied upon by defendant, is not in point, for the facts in that case, in important particulars, were essentially different from the facts in the case at bar. In the former case the party-wall agreement contained no stipulations to the effect that the ownership of the whole wall should remain in the covenantee until paid for, and its covenants did not run with the land. While the adjudged cases in reference to party-wall contracts rest upon the particular facts of each case, and are, for this reason, apparently conflicting, yet in cases where the covenants are similar to those in this case, and contain a clear manifestation of an intent that they should run with the land, and bind the parties and their assigns, it is held with practical unanimity that such a party-wall agreement creates an equitable charge, easement, and servitude upon the lot it is built upon. Warner v. Rogers, 23 Minn. 34; Mackey v. Harmon, supra; Richardson v. Tobey, 121 Mass. 457; Sharp v. Cheatham, 88 Mo. 498.

The majority of the court are of the opinion that in this case there can be no personal liability for the cost of one-half of the

wall against the grantees or assigns of the original covenantors, except the one who first used the wall in erecting the building on lot 10. This being so, it follows that Holmes, the grantee who erected such building, is alone personally liable for the purchase price of the wall, and the plaintiff's only remedy in this action is an enforcement of its equitable lien on the lot; and therefore the personal judgment entered against the defendant is erroneous. Mr. Justice BUCK is of the opinion—and I agree with him—that not only has the plaintiff a lien on the lot to secure the payment of the cost of the wall, but that under the special covenants in the agreement in question, which runs with the land, the defendant is personally liable; it cannot accept the benefits of the covenants, and make use of the plaintiff's wall as a party wall, with notice of such covenants, and repudiate their burdens.

2. The findings of fact in this case are amply sustained by the evidence. A finding either way as to the alleged agreement with Holmes would be sustained. It is simply a question of the credibility of the witnesses. The covenant with reference to the payment for the wall was not to pay for the number of cubic feet actually used, but to pay one-half of the cost for so much of the wall as was used, in length, without reference to the height. If only the part of the wall which was actually used was to be paid for, there was no occasion to insert the words "in length" in the contract.

The judgment must be modified, and the cause remitted to the district court, with direction to modify the judgment by adjudging that the plaintiff has a lien on the defendant's lot to secure one-half of the cost of the party wall, as found by the trial court, and that such lot be sold, in the manner provided by law for the sale of real estate on execution, to pay the amount of such lien, and the costs of the action, and expenses of sale; that no personal judgment for the recovery of the amount of such lien be entered against the defendant.

So ordered.


CANTY, J. (concurring). In my opinion, the covenant in question does not run with the land at all, in the strict or technical sense of that term. If it did, it would make the defendant per-

sonally liable.   The benefit of a covenant relating to land will run with the land, but the burden of such a covenant will not, except in cases growing out of leases, as to which the rule was changed by the statute 32 Hen. VIII. c. 34.   See notes to Spencer's Case, 1 Smith, Lead. Cas. (8th Ed.) 150; also, Id. 176, 178.   But, where there is no other remedy, equity will often interfere by injunction, or by declaring the burden of the covenant a charge on the land (Jd. 232), and it seems to me that this is a case where it should be declared such a charge.