ROCHESTER LODGE NO. 21, ANCIENT FREE & ACCEPTED MASONS v. MICHAEL W. GRAHAM and Others.[1]

July 13, 1896.

Nos. 9897—(194).

**Conveyance by Life Tenant and Reversioner—Covenant of Reversioner—Effect on Life Estate.**

A. was the owner of a life estate in a city lot, and B. was the owner of the reversion. They were erecting the first and second stories of a building on the lot, and C., under a license from them, was erecting the third story. Thereupon A. and B. joined in a conveyance in fee to C. of such third story. In the conveyance B. covenanted to build and maintain forever the roof of the building, and C. covenanted to pay a perpetual rent of $25 per annum. B. built the roof, and thereafter A. and B. joined in a conveyance in fee of the rest of the premises except the third story to certain of the defendants. In time the roof became decayed, and C. was compelled to erect a new one, and brought this action to have the whole cost of the same declared a lien on the interest of such defendants in the building and lot. A. is still living. *Held*, A. not having joined in the covenant to maintain the roof, the covenant of B. to do so does not run with the life estate of A., or incumber the same, either in law or equity, with the whole burden of maintaining the roof; that such defendants are still enjoying possession under that life estate, and not under the reversion, and, so far as plaintiff's present claim is concerned, it can only compel contribution from such defendants of their equitable share of the cost of maintaining the roof.

**Same—Covenants Running with Land.**

Distinction noted between a conveyance in fee reserving rent and a lease for life or years, as to covenants running with the land.

Action in the district court for Olmsted county against Michael W. Graham, Edward A. Schwartz, and Anna L. Schwartz, his wife. Rob-

[1] Reported in 68 N. W. 79.

ert B. Graham and Rebecca N. Graham, his wife, were also joined as defendants, but the summons was not served upon them, nor did they appear.    The cause was tried before Gould, J., who ordered judgment in favor of plaintiff.    From an order denying a motion for a new trial, defendants Michael W. Graham and Edward A. Schwartz appealed. Reversed.

*Chas. C. Willson*, for appellants.

*R. H. Gove* and *Burt W. Eaton*, for respondent.

CANTY, J.    The following facts appear from the findings of the court in this action:

On August 15, 1864, Rebecca N. Graham was the owner of a life estate for and during her life in a certain city lot in Rochester, Minnesota, and her husband, Robert B. Graham, was the owner of the reversion.    There was then in the course of erection on the lot a brick building, "designed for two stores below with hallway and other rooms on the second floor."    On that day the Grahams made a deed conveying to three persons named, "as trustees for Rochester Lodge No. 21, Ancient Free and Accepted Masons, then an unincorporated organized society," "the entire upper or third story of said building, not exceeding 20 feet in height above the bottom of the joists" under the floor of that story; also a certain designated dark room in the second story, with a right of passage down the stairways to the street. At the time of making this deed, the lodge had already, at its own expense, constructed nearly all of said third story except the roof, under a verbal license from the Grahams.

It is further found:    "That in and by said deed the said Robert B. Graham (but not his wife) covenanted as follows, among other things, viz.:    'First. That he will build, repair, and maintain forever a good, substantial, and efficient roof and cornice upon said building.'    That said deed was made by said grantors to said grantees in trust for the use and benefit of the said Rochester Lodge No. 21, to be used for the purposes and object of said society; and the grantees on their part covenanted therein with the grantors (1) to assume and faithfully execute said trust, subject to the advice and approval of said lodge; (2) to pay an annual rental of $25 on the 1st of January, each and every year; (3) to reconvey to grantors, their heirs or assigns, on request, after ten years, upon certain conditions; and (4) to 'grant and quit-

claim all the real estate, right and privileges acquired by them under this instrument (subject to the rights, rents, and reservations herein secured to the grantors) unto the said Rochester Lodge No. 21, Ancient Free and Accepted Masons, within one month after said society shall be duly and legally incorporated, and capable of taking and holding title to real estate.' "    This deed was recorded.    On June 29, 1875,— within one month after the lodge was incorporated,—two of the trustees conveyed to the lodge, and afterwards on August 4, 1875, the other trustee conveyed separately to the lodge.    By conveyances from Robert B. and Rebecca N. Graham, subsequent to the one to the three trustees, the defendant Michael W. Graham became the owner of both the life estate and reversion in the north half of the lot and building as to the first and second stories of the building, and the defendant Edward A. Schwartz of the south half thereof.

In the course of time, the roof became leaky and out of repair, and it became necessary to rebuild the same.    The defendants, including Robert B. Graham, were notified by the lodge to rebuild it, but neglected to do so.    For these reasons the lodge was compelled to and did rebuild the roof at an expense to it of $261, and brought this action against all of the Grahams and Schwartz and wife to have the amount so expended declared a lien on the rest of the premises, and to have the same sold to pay such amount.    On the trial before the court without a jury the court ordered judgment as so prayed for, and from an order denying a new trial the owners of the rest of the premises appeal.    Other facts will be stated in connection with the discussion of the case.

Rebecca N. Graham is still living, so her life estate is still running. The ten-year option reserved in the deed to the three trustees was never exercised, and therefore it is out of the case.    The $25 per year rent reserved to the grantors in that deed was a perpetual rent reserved on a conveyance in fee.    Since the statute of quia emptores,[2] the reservation of such a rent does not create between the grantor and grantee any relation of landlord and tenant, give rise to any fealty between them, or give the grantor any tenure or possibility of reverter, but immediately on the delivery of the deed the parties become strangers to each other.    2 Washburn, Real Prop. (5th

[2] 18 Edward I. c. 1.

Ed.) 284–298; notes to Dumpor's Case, 1 Smith, Lead. Cas. (7th Ed.) 93, and to Spencer's Case, Id. 137. Where the right of distress was reserved or given with the rent, the payment might be enforced by distress of the goods of any one in possession under the grantee. Such a rent was termed a "rent charge." But where no right of distress was reserved there was no remedy for its collection, except the personal liability of him who made the covenant to pay the rent. This was termed a "rent seck." Id. While the statute of quia emptores cut off or crippled the remedies for the collection of rent in fee as between subsequent holders of the rent and land, the statute of 32 Hen. VIII. c. 34, greatly enlarged such remedies as between the assignees of the landlord and the assignees of the tenant in the case of leases for life or for years. Id. Again, as to cases not coming within the statute of Hen. VIII. it is generally held that, where the covenant is of a nature to inhere in and follow the land, the benefit of it will run with the land into the hands of subsequent grantees of the covenantee; but the converse is not true. The burden of the covenant will not follow the land into the hands of the covenantor's grantee, at least so as to make him personally liable; and there is generally no remedy against him, at least at law. Notes to Spencer's Case, supra. But in many instances in cases of this character equity has furnished relief against such grantee, not by making him personally liable, as if the burden of the covenant ran with the land in the technical sense of the term, but by injunction, or by declaring the burden of the covenant a lien on the land itself. See notes to Dumpor's Case, 1 Smith, Lead. Cas. (7th Am. Ed.) 135; note to Spencer's Case, Id. 175–178, 187, 223, 224. See, also, Dumpor's Case, 1 Smith, Lead. Cas. (9th Ed.) 145, 161–166; Spencer's Case, Id. 220; First Nat. Bank v. Security Bank, 61 Minn. 25, 63 N. W. 264.

Let us now proceed to apply these principles to the case before us. Rebecca N. Graham never covenanted to maintain the roof, and by joining in the deed to the three trustees, and conveying her life estate in the third story of the building, she did not, either in law or equity, incumber her life estate in the rest of the building and property with the burden of the whole maintenance of the roof. She could subsequently have conveyed away her life estate in the rest of the property separately from her husband's reversion, and her grantee would not take such life estate burdened with such incumbrance.

Then why should not her grantee enjoy the same immunity, even though he takes in the same deed a conveyance of her husband's reversion also? That reversion may, in equity, have been incumbered with the burden of the whole maintenance of the roof after the termination of the life estate. But the merger of that reversion with the life estate, by a conveyance of both estates to one person, has not enlarged that incumbrance by extending over the life estate, during its existence, the whole burden of maintaining the roof. That would be contrary to the plainest principles of equity. The life estate has not yet terminated, and the present owners are enjoying possession under it, and not under the reversion. Then, conceding without deciding, that by reason of other facts not hereinbefore recited Robert B. Graham has not been released by the lodge from his covenant to maintain the roof, and conceding also that after the termination of the life estate the reversion will be incumbered with the burden of the whole maintenance of the roof, and will be so incumbered after his death, even if he has been personally released, yet we must hold that this is the utmost extent of the right of the lodge to throw the whole burden of the maintenance of the roof on the other owners of the property. Then, so far as its present claim is concerned, the plaintiff can only proceed against the other owners of the property to compel contribution of their equitable share of the cost of maintaining the roof. 2 Washburn, Real Prop. (5th Ed.) 388. This conclusion renders it unnecessary to consider any of the other questions raised on this appeal.

The order appealed from is reversed, and a new trial granted.